**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JUSTIN WASHINGTON,<br><br>                 Plaintiff,<br>    -against-<br><br>SQUARESPACE, INC.,<br><br>                Defendant. | Case No.:<br><br>COMPLAINT<br><br>JURY TRIAL DEMANDED |

Plaintiff Justin Washington ("Plaintiff") by and through his attorneys, Mesidor PLLC, against Defendant Squarespace, Inc. ("Defendant") alleges as follows:

## NATURE OF CLAIMS

1. Plaintiff brings this action alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*. ("Title VII"); the New York State Human Rights Law, N.Y., N.Y. Exec. Law §§ 290 *et seq* (the "NYSHRL"); and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 *et seq*. (the "NYCHRL").

## PARTIES

2. Plaintiff is a resident of the State of New York, residing in Kings County.

3. At all relevant times, Plaintiff was and is a "person" and an "employee" entitled to protection as defined by state, city, and federal laws.

4. At all relevant times, Defendant is a website building and hosting company incorporated under the laws of the State of Delaware, with a principal place of business in New York, New York.

5. At all relevant times, Defendant employed fifty or more employees and is thus an "employer" and covered entity within the meaning of Title VII, the NYSHRL, and the NYCHRL.

1

**JURISDICTION AND VENUE**

6.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 42 U.S.C. §§ 2000e, et seq.

7.      This Court has supplemental jurisdiction over all state law claims pursuant to 28 U.S.C. §1367.

8.      Venue is proper in this district pursuant to 28 U.S.C. §1391(b)(2), as a substantial part of the actions or omissions giving rise to the claims for relief occurred within this judicial district.

**PROCEDURAL PREREQUISITES**

9.      On September 18, 2025, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").

10.     On April 1, 2026, Plaintiff received a Notice of Right to Sue from the EEOC.

11.     This action is being commenced within 90 days of receipt of the Notice of Right to Sue.

**FACTUAL ALLEGATIONS**

12.     In May 2024, Plaintiff, a Black man, was hired by Defendant as a Senior Financial Systems Lead, bringing with him a unique background in both systems technology and finance.

13.     Plaintiff initially worked under the supervision of Kamiya Gosar ("Gosar"), Director, Financial Systems.  However, in July 2024, Gosar abruptly quit.

14.     Following Gosar's departure, Beth Alix ("Alix"), Principal People Partner, contacted Plaintiff in early August 2024 to check-in with Plaintiff given the nature of Gosar's exit from the company.

15. During his conversation with Alix, Plaintiff shared general concerns, including Defendant's inability to retain quality employees.

16. Several days later, Alix messaged Plaintiff, informing him that Nathan Gooden ("Gooden"), Chief Financial Officer, wanted to meet with him.

17. On August 14, 2024, Plaintiff met with Gooden. During that meeting, Gooden asked Plaintiff to be as transparent as possible, as he was still relatively new as Chief Financial Officer.

18. Following Gooden's directive, Plaintiff disclosed that the source of the issues he saw at Defendant was Ashley Dahl ("Dahl"), Senior Director, Financial Planning & Analysis ("FP&A"), the department with which Plaintiff primarily worked.

19. Among other things, Plaintiff expressed his concerns that Dahl regularly hurled profanities at consultants and routinely placed obstacles in the path of non-white employees (who Plaintiff specifically identified), and Dahl's behavior impeded those employees' ability to perform their jobs.

20. In response, both Gooden and Alix said they had received similar complaints in the past about Dahl, which came as no surprise to Plaintiff as he had previously heard from other employees that non-white employees in his role, or similar roles, had either been fired or quit because of Dahl.

21. Two days later, on August 16, 2024, Plaintiff reiterated his complaint regarding Dahl to one of his supervisors, Clara Laso ("Laso"), Senior Director, Finance Operations.

22. Despite assurances from Gooden, Laso and Alix that Defendant was taking actions to address Dahl's conduct, nothing ever materialized.

3

23.     Rather, Laso informed Plaintiff that it was part of his duties and responsibilities as an employee of Defendant to have lunch and dinner with Dahl during a business trip in mid-September 2024.

24.     As such, Plaintiff was forced to have dinners with Dahl, during which he listened to her incessantly berate the non-white employees who reported to her, calling them incompetent and unable to perform their jobs.

25.     After the business trip, in or around late September 2024, Plaintiff spoke with Laso to complain about Dahl's continuous disparagement of non-white employees at their shared meals, noting, in his complaint to Laso, that Dahl's behavior was discriminatory towards employees on account of their race.

26.     Following his complaints, Plaintiff began to experience retaliation from Dahl.  On October 17, 2024, Plaintiff attended a kickoff meeting for a project with Dahl as well as numerous members of the FP&A and Finance Systems' teams.  Instead of meaningfully participating, Dahl used the opportunity to verbally insult Plaintiff before terminating the meeting prematurely.

27.     Around the same time, and continuing thereafter, Plaintiff's projects were abruptly terminated.

28.     On December 6, 2024, Rajiv Ramdeo ("Ramdeo"), Senior Manager, Financial Systems, informed Plaintiff that Dahl had an issue with Plaintiff and did not want Plaintiff to communicate with her or her team, which made it impossible for him to perform his job.

29.     Dahl further insisted that Plaintiff no longer participate in weekly meetings regarding a particular system, which Plaintiff led.

30.    In December 2024, Defendant elected to transition from the Adaptive system to another system over the objections of Plaintiff's supervisors, Ramdeo and Asif Ahmed ("Ahmed"), Manager, Financial Systems.

31.    Nonetheless, the decision having been made, Ramdeo and Ahmed both strongly advocated for Plaintiff to remain working on the new system, with each stressing how essential Plaintiff was to the team.

32.    Despite the support of his supervisors, Dahl refused to permit Plaintiff to work on the new system, making it evident that she wanted nothing to do with him and that his remaining time working for Defendant was limited.

33.    Indeed, Ramdeo told Plaintiff in early December 2024 that he should start looking for a new job, indicating that the decision to terminate his employment had already been made.

34.    On January 31, 2025, Ramdeo and Ahmed informed Plaintiff that his employment was coming to an end, with only the effective date of his termination left to be determined.

35.    On February 5, 2025, Defendant formally terminated Plaintiff's employment, purportedly due to the decision to move away from Adaptive.

36.    However, one of Plaintiff's white co-workers, who was part of the same project as Plaintiff, was not only retained but promoted to a new role with Defendant.

37.    Notably, in his mid-year review, which Plaintiff received after notice of his termination, Plaintiff was scored exceptional in all areas but was assigned an overall score of does not meet expectations due to a purported "HR error."

## FIRST CAUSE OF ACTION
## FOR DISCRIMINATION UNDER TITLE VII

38.     Plaintiff repeats and realleges each and every allegation in the preceding paragraphs as if fully set forth herein.

39.     Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1) prohibits employers from discriminating against any individual with respect to compensation, terms, conditions, or privileges of employment because of such individual's race.

40.     As described herein, Defendant intentionally discriminated against Plaintiff because of his race in violation of Title VII by terminating his employment based on his race.

41.     Defendant's conduct was intentional, willful, and in reckless disregard of Plaintiff's federally protected rights.

42.     As a direct and proximate result of Defendant's unlawful discriminatory conduct, Plaintiff has suffered and continues to suffer economic loss, including loss of wages, bonuses, benefits, and future earning capacity, for which she is entitled to an award of back pay, front pay, and compensatory damages.

43.     As a direct and proximate result of Defendant's unlawful discriminatory conduct, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including depression, anxiety, humiliation, stress, loss of self-esteem, and emotional pain and suffering, for which he is entitled to an award of compensatory damages.

44.     Plaintiff is entitled to declaratory relief, compensatory damages, punitive damages, attorneys' fees and costs, and all other relief available under Title VII.

## SECOND CAUSE OF ACTION
## <u>FOR RETALIATION UNDER TITLE VII</u>

45.     Plaintiff repeats and realleges each and every allegation in the preceding paragraphs as if fully set forth herein.

46.     Title VII, 42 U.S.C. § 2000e-3(a), prohibits employers from retaliating against employees who oppose unlawful employment practices.

47.     Plaintiff engaged in protected activity by complaining of racial discrimination, as described herein.

48.     After Plaintiff engaged in protected activity, Defendant retaliated against Plaintiff by terminating his employment.

49.     Such retaliatory treatment would dissuade a reasonable employee from making or supporting a complaint of discrimination.

50.     As a direct and proximate result of Defendant's unlawful retaliatory conduct, Plaintiff has suffered and continues to suffer economic loss and severe emotional distress, for which he is entitled to an award of compensatory damages and other relief.

51.     Plaintiff is entitled to declaratory relief, compensatory damages, punitive damages, attorneys' fees and costs, and all other relief available under Title VII.

## THIRD CAUSE OF ACTION
## <u>FOR DISCRIMINATION UNDER THE NYSHRL</u>

52.     Plaintiff repeats and realleges each and every allegation in the preceding paragraphs as if fully set forth herein.

53.     The New York State Human Rights Law, N.Y. Exec. L. § 296(1)(a) prohibits employers from discriminating against individuals in compensation, terms, conditions, or privileges of employment because of race.

54.    As described herein, Defendant intentionally discriminated against Plaintiff because of his race in violation of the NYSHRL by terminating his employment based on his race.

55.    Defendant's conduct was willful and in reckless disregard of Plaintiff's rights under the NYSHRL.

56.    As a direct and proximate result of Defendant's unlawful discriminatory conduct, Plaintiff has suffered and continues to suffer economic loss and severe emotional distress, for which he is entitled to an award of compensatory and punitive damages.

57.    Plaintiff is entitled to declaratory relief, compensatory damages, punitive damages, attorneys' fees and costs, and all other relief available under the NYSHRL.

**FOURTH CAUSE OF ACTION**
**<u>FOR RETALIATION UNDER NYSHRL</u>**

58.    Plaintiff repeats and realleges each and every allegation in the preceding paragraphs as if fully set forth herein.

59.    The New York State Human Rights Law, N.Y. Exec. L. § 296(7), prohibits employers from retaliating against employees who oppose practices forbidden by the NYSHRL.

60.    Plaintiff engaged in protected activity by complaining of race discrimination, as described herein.

61.    After Plaintiff engaged in protected activity, Defendant retaliated against Plaintiff by terminating his employment.

62.    As a direct and proximate result of Defendant's unlawful retaliatory conduct, Plaintiff has suffered and continues to suffer economic loss and severe emotional distress, for which he is entitled to an award of damages.

63.    Plaintiff is entitled to declaratory relief, compensatory damages, punitive damages, attorneys' fees and costs, and all other relief available under the NYSHRL.

## FIFTH CAUSE OF ACTION
## <u>FOR DISCRIMINATION UNDER THE NYCHRL</u>

64.    Plaintiff repeats and realleges each and every allegation in the preceding paragraphs as if fully set forth herein.

65.    The New York City Human Rights Law, N.Y.C. Admin. Code § 8-107(1)(a), prohibits employers from discriminating against individuals in compensation, terms, conditions, or privileges of employment because of race.

66.    As described herein, Defendant intentionally discriminated against Plaintiff because of his race in violation of the NYCHRL by terminating his employment based on his race.

67.    As a direct and proximate result of Defendant's unlawful discriminatory conduct, Plaintiff has suffered and continues to suffer economic loss and severe emotional distress, for which he is entitled to an award of damages.

68.    Plaintiff is entitled to declaratory relief, compensatory damages, punitive damages, attorneys' fees and costs, and all other relief available under the NYCHRL.

## SIXTH CAUSE OF ACTION
## <u>FOR RETALIATION UNDER THE NYCHRL</u>

69.    Plaintiff repeats and realleges each and every allegation in the preceding paragraphs as if fully set forth herein.

70.    The New York City Human Rights Law, N.Y.C. Admin. Code § 8-107(7), prohibits employers from retaliating against employees who oppose practices forbidden by the NYCHRL.

71.    Plaintiff engaged in protected activity by complaining of race discrimination, as described herein.

72.    After Plaintiff engaged in protected activity, Defendant retaliated against Plaintiff by terminating his employment.

73.    Such retaliatory treatment would dissuade a reasonable employee from engaging in protected activity.

74.    As a direct and proximate result of Defendant's unlawful retaliatory conduct, Plaintiff has suffered and continues to suffer economic loss and severe emotional distress, for which he is entitled to an award of damages.

75.    Plaintiff is entitled to declaratory relief, compensatory damages, punitive damages, attorneys' fees and costs, and all other relief available under the NYCHRL.

## JURY DEMAND

76.    Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all claims so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment:

a.    Declaring that Defendant violated Title VII, the NYSHRL, and the NYCHRL;

b.    Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendant's unlawful discrimination, and to otherwise make him whole for any losses suffered as a result of such unlawful employment practices;

c.    Awarding compensatory damages for mental anguish, emotional distress, and humiliation;

d.    Awarding punitive damages;

e.    Awarding pre- and post-judgment interest;

f.    Awarding attorneys' fees, costs, and expenses; and

g.    Granting such other relief as the Court deems just and proper.

10

Dated: June 30, 2026
      Bellport, New York

                                              **MESIDOR PLLC**

                                              Marjorie Mesidor
                                              30 Station Road, Ste 5
                                              Bellport, NY 11713
                                              (212) 930-6010
                                              mm@marjoriemesidor.com
                                              *Attorneys for Plaintiff*